UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
**ALLAN H. APPLESTEIN**, an individual, and
**DIATOMITE CORPORATION OF AMERICA**,
a Maryland corporation

                      Plaintiffs,

-against-

**HOWARD KLEINHENDLER**, an individual,
**WACHTEL MISSRY LLP**, a limited liability
partnership

                      Defendants.
----------------------------------------------------------------- X

**MEMORANDUM**
**DECISION AND ORDER**
20-CV-1454 (AMD) (VMS)

**ANN M. DONNELLY,** United States District Judge:

In December of 2019, the plaintiffs filed this action in the Southern District of Florida alleging legal malpractice, elder abuse and related claims. (*See* ECF No. 1.) On March 4, 2020, the presiding judge determined that the action was "interrelated" with a bankruptcy proceeding pending in this District, and transferred the action to this Court. (ECF No. 26); *see In re Virginia True Corp.*, 1-19-42769-nhl (Bankr. E.D.N.Y.) The defendants move to stay this action pending the resolution of that bankruptcy proceeding. (ECF No. 34.) For the reasons discussed below, the defendants' motion is denied.

## BACKGROUND[1]

A. *Fones Cliffs Transaction*

Mr. Applestein, a businessman, is eighty-eight years old and has been diagnosed with Alzheimer's disease. (ECF No. 23 ¶ 1.) He is the founder and principal of co-plaintiff

---

[1] These facts are taken from the plaintiff's complaint, as well as from other court dockets, of which this Court is permitted to take judicial notice. *See Morgan Art Found. Ltd. v. McKenzie*, No. 18-CV-4438, 2019 WL 2725625, at *2 (S.D.N.Y. July 1, 2019); *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388-89 (2d Cir. 1992).

Diatomite. (*Id.*) This action arises from Diatomite's 2017 sale of certain real property ("Fones Cliffs") to Virginia True Corporation ("VTC"). (*See id.* ¶¶ 31-32.) Defendant Howard Kleinhendler, an attorney and partner of Wachtel Missry LLP, is the founder and part-owner of VTC. (*Id.* ¶¶ 3, 27, 36.) The plaintiffs allege that Mr. Kleinhendler structured the Fones Cliffs deal while also representing Mr. Applestein in the transaction. (*Id.* ¶¶ 22-24.) Mr. Kleinhendler did not seek or obtain a conflict waiver from Mr. Applestein, nor did he apprise his client of the conflict. (*Id.* ¶¶ 16, 25.) Given Mr. Appelstein's declining mental state—of which Mr. Kleinhendler was aware—Mr. Applestein could not appreciate the conflict on his own. (*Id.* ¶¶ 16-17.) Nevertheless, the Fones Cliffs sale was executed on April 27, 2017. (*Id.* ¶ 32.)

In the process of securing investments for the purchase, Mr. Kleinhendler entered into an agreement that purportedly gave certain investors the right to convert their $5 million equity in VTC into a mortgage on Fones Cliffs. (*Id.* ¶ 38.) Subject to that agreement, VTC executed a deed of trust in favor of these investors (the "Mortgage Holders") on December 12, 2018. (*Id.* ¶ 39.)

B. *VTC Files for Bankruptcy*

On May 3, 2019, VTC filed for bankruptcy. Chapter 11 Pet., *In re Virginia True Corp.*, 1-19-42769 (Bankr. E.D.N.Y. May 3, 2019). The following details from the bankruptcy proceeding are relevant to this motion:

First, Diatomite and the Mortgage Holders each filed a proof of claim form in the bankruptcy. (ECF Nos. 34-4-34-6.) Diatomite claims $7.28 million, and the Mortgage Holders claim $5 million jointly. (*Id.*)

Second, on September 4, 2019, VTC filed an adversary proceeding in the bankruptcy case, which Diatomite has since joined as an intervenor-plaintiff, that seeks to avoid or

2

subordinate the Mortgage Holders' mortgage on Fones Cliffs.  (ECF No. 34-7); Am. Compl., *Virginia True Corp. v. Cipollone*, 1-19-01118-nhl (Bankr. E.D.N.Y. Sept. 4, 2019), ¶ 6.  The Mortgage Holders filed a motion to dismiss the adversary proceeding on February 11, 2020.  Mot. to Dismiss, *Virginia True Corp. v. Cipollone*, 1-19-01118-nhl (Bankr. E.D.N.Y. Feb. 11, 2020).  The motion is pending.

Third, VTC and Diatomite have each filed a proposed Chapter 11 Plan in the bankruptcy action.  (ECF Nos. 34-11-34-14.)

VTC's proposed plan classifies Diatomite as a general unsecured creditor with an "allowed"[2] claim amount of $7 million.  (ECF No. 34-12 at 19.)  If VTC's plan were to be confirmed, Diatomite would receive this amount in three installments to be paid on designated dates across four years, with 4% interest per year.  (ECF No. 34-11 at 9.)

Diatomite's proposed plan is contingent upon its success in the adversary proceeding—getting the Mortgage Holders' purported lien on Fones Cliffs set aside or subordinated to other claims.  (ECF No. 34-13 at 17 n.1.)  The plan contemplates the sale of Fones Cliffs by auction, in which Diatomite is permitted to bid.  (*Id.* at 12.)  To support Diatomite's potential reacquisition of Fones Cliffs, the plan provides that Diatomite will contribute $950,000 for the payment of certain administrative expenses and fees, taxes, and similar amounts owed by the debtor ("Creditor Plan Funding").  (*Id.* at 8-9.)  Distributions under Diatomite's plan depend on who purchases the Fones Cliffs property.  (*Id.* at 18-19.)  If Diatomite purchases Fones Cliffs, general unsecured creditors would be paid a *pro rata* share of the remaining Creditor Plan Funding, after "senior allowed claims"[3] are paid in full.  (*Id.* at 18.)  Moreover, Diatomite would release its

---

[2] As relevant to this motion, the "allowed" claim amount is the amount of money to which the creditor is formally deemed entitled from the debtor under the bankruptcy plan.

[3] "Senior allowed claims" are higher-priority "allowed" claims.

unsecured claim against the debtor. (*Id.* at 18-19.) If a third-party (any party other than Diatomite or its affiliates) purchases Fones Cliffs, general unsecured creditors and Diatomite—as one, merged class of claim holders—would receive a *pro rata* share of the remaining sale proceeds, after Diatomite is fully reimbursed for the Credit Plan Funding (from the proceeds of the Fones Cliffs sale) and senior allowed claims are paid in full. (*Id.* at 13, 18.)

Finally, at a pre-trial hearing on July 28, 2020, the bankruptcy court directed VTC, Diatomite and the Mortgage Holders to participate in mediation "with regard to all disputed matters in the . . . Chapter 11 case and adversary proceeding." Mediation Order, *Virginia True Corp. v. Cipollone*, 1-19-01118-nhl (Bankr. E.D.N.Y. Sept. 4, 2020). The mediation is pending.[4]

C. *Legal Malpractice Suit*

The plaintiffs raise four causes of action: legal malpractice, breach of fiduciary duty, elder abuse and fraud. (ECF No. 23 ¶¶ 42-81.) The plaintiffs seek more than $7.7 million in compensatory damages, as well as punitive damages and other relief. (*Id.* at 16-17.)

## LEGAL STANDARD

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 245 (1936)). Nevertheless, "a stay is an intrusion into the ordinary processes of administration and judicial review," *Maldonado-Padilla v. Holder*, 651 F.3d 325, 328 (2d Cir. 2011), and thus, the party "seeking the stay 'bears the burden of establishing its need.'" *Louis Vuitton*, 676 F.3d at 97 (quoting *Clinton v. Jones*, 520 U.S. 681, 708 (1997)).

---

[4] On September 18, 2020, the defendants filed a "Supplement to Reply" in support of their motion to stay, informing the Court of the mediation. (ECF No. 41.) The plaintiff objected to the supplement as "improper and untimely," and urged the Court to disregard it. (ECF No. 42 at 1-2.) The Court takes judicial notice of the mediation as part of the relevant bankruptcy dockets.

Second Circuit courts evaluating whether a discretionary stay is warranted generally consider the five "*Kappel*" factors: "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." *United States v. Town of Oyster Bay*, 66 F. Supp. 3d 285, 289 (E.D.N.Y. 2014).  The defendants identify another seven-factor test (the "*Washington Mutual*" test[5]), but it is substantially the same as the *Kappel* test, which is the test most courts apply.  In any event, these tests act only "as a rough guide for the district court as it exercises its discretion." *Louis Vuitton*, 676 F.3d at 99.  The Court's obligation is to make a "studied judgment . . . based on the particular facts before it," *id.*, and to "avoid prejudice," *LaSala v. Needham & Co.*, 399 F. Supp. 2d 421, 427 (S.D.N.Y. 2005).

## DISCUSSION

Based on the facts before this Court, a stay is not warranted.  Although the claims and issues in the bankruptcy proceeding implicate the damages in this action, there are liability questions that the bankruptcy case will not necessarily resolve, as an evaluation of the *Kappel* factors shows.

First, the plaintiff's private interests in proceeding expeditiously with this civil action would be prejudiced by a stay.  The bankruptcy action, including the related adversary proceeding, has been diverted to mediation since July 2020.  Mediation Order, *Virginia True Corp. v. Cipollone*, 1-19-01118-nhl (Bankr. E.D.N.Y. Sept. 4, 2020).  Accordingly, neither

---

[5] "(1) considerations of comity; (2) promotion of judicial efficiency; (3) adequacy and extent of relief available in the alternative forum; (4) identity of parties and issues in both actions; (5) likelihood of prompt disposition in the alternative forum; (6) convenience of the parties, counsel and witnesses; and (7) possibility of prejudice to a party as a result of the stay." (ECF No. 34-1 at 9-10 (quoting *Washington Mut. Bank v. Law Off. of Robert Jay Gumenick, P.C.*, 561 F. Supp. 2d 410, 411-12 (S.D.N.Y. 2008).)

adoption of a Chapter 11 plan nor resolution of the claims in the adversary proceeding appears imminent.  While courts have found that short delays do not unduly prejudice the plaintiff, *see, e.g.*, *Loftus v. Signpost Inc.*, 464 F. Supp. 3d 524, 527 (S.D.N.Y. 2020), it is not clear in this case when mediation will conclude, or if it will be successful.  The risk of prejudice is especially pronounced for one plaintiff who is not a party to the bankruptcy proceeding—88 year-old Mr. Applestein.  *Galati v. Pharmacia & Upjohn Co.*, No. 10-CV-3899, 2011 WL 2470047, at *2 (E.D.N.Y. June 17, 2011) (finding 67 year-old plaintiff would be prejudiced by stay in part because of her age).

Second, the defendants will not be unduly burdened if the case is not stayed.  Courts have found that a stay is appropriate if the defendant would otherwise be forced to participate in duplicative discovery.  *See, e.g.*, *Liguori v. Wells Fargo Bank, N.A.*, No. 19-CV-10677, 2020 WL 5370709, at *5 (S.D.N.Y. Sept. 8, 2020).  In this case, however, there are distinct factual issues, particularly with respect to the elder abuse claims.  More fundamentally, the parties in the actions are different.  It is VTC, and not Mr. Kleinhendler or Wachtel Missry, that has filed for bankruptcy.  Likewise, these defendants are not parties to the adversary proceeding.  *See* Am. Compl., *Virginia True Corp. v. Cipollone*, 1-19-01118-nhl (Bankr. E.D.N.Y. Sept. 4, 2019).

I consider the third, fourth, and fifth factors together because issues of judicial economy affect the interests of non-parties and the public.  *See Albert v. Blue Diamond Growers*, 232 F. Supp. 3d 509, 513 (S.D.N.Y. 2017) (efforts to "conserve judicial resources and promote judicial economy" promote the "interests of non-parties and the public"); *Estate of Heiser v. Deutsche Bank Trust Co. Americas*, No. 11-CV-1608, 2012 WL 2865485, at *4 (S.D.N.Y. July 10, 2012) ("[C]onsiderations of judicial economy are frequently viewed as relevant to the public interest, and, as noted, they weigh against the investment of court resources that may prove to

have been unnecessary.")  Because there are non-overlapping liability questions in this action, a stay does not necessarily promote judicial economy.  Similarly, because the parties in the two sets of actions are different, it is not clear that resolution of particular issues or claims in the bankruptcy would have a preclusive effect in this action.  "When a district court decides to dismiss or stay, it presumably concludes that the parallel litigation will be an adequate vehicle for the complete resolution of the issues between the parties."  *Consol. Edison Co. of New York v. United States*, 30 F. Supp. 2d 385, 389 (S.D.N.Y. 1998).  But the plaintiffs in this action seek relief not contemplated in the bankruptcy proceeding—namely, punitive damages for their tort claims.

      Overall, I am guided by my mandate to make a "studied judgment . . . based on the particular facts before" me, *Louis Vuitton*, 676 F.3d at 99, with the aim of "avoid[ing] prejudice." *LaSala v. Needham & Co.*, 399 F. Supp. 2d at 427.  The claims unique to this case—defendants accused of taking advantage of an elderly client—will not be resolved by the bankruptcy proceeding, which although related, is a discrete action with distinct parties and claims.  Because the resolution of those claims would not clearly or necessarily dispose of the core question in this action—whether the defendants knowingly took advantage of their elderly client in violation of statutory and common law—a stay is not warranted.

## CONCLUSION

The defendants' motion to stay this action is denied.

**SO ORDERED.**

                                                                                        s/Ann M. Donnelly
                                                                                  ANN M. DONNELLY
                                                                                  United States District Judge

Dated: Brooklyn, New York
         February 10, 2021