UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALLAN H. APPLESTEIN, an individual, and DIATOMITE CORPORATION OF AMERICA, a Maryland Corporation,<br><br>  Plaintiffs,<br><br>  -against-<br><br>HOWARD KLEINHENDLER, an individual, WACHTEL MISSRY LLP, a limited liability partnership, and DOES 1 through 5,<br><br>  Defendants. | **MEMORANDUM AND ORDER**<br><br>Case No. 20-CV-1454 (FB) (MMH) |

*Appearances:*
*For Plaintiffs*:
THOMAS H. VIDAL
Pryor Cashman LLP
1801 Century Park East, 24th Floor
Los Angeles, CA 90067

*For Defendant Kleinhendler*:
STEPHEN M. FARACI, SR.
Whiteford, Taylor & Preston L.L.P
1021 East Cary Street, Suite 1700
Richmond, VA 23219

*For Defendant Wachtel Missry LLP*:
ALBERT A. CIARDI, III
JENNIFER C. MCENTEE
Ciardi Ciardi & Astin
1905 Spruce Street
Philadelphia, PA 19103

**BLOCK, Senior District Judge:**

Defendants Howard Kleinhendler and Wachtel Missry LLP separately move for summary judgment on legal malpractice and related claims brought by Plaintiffs Allan H. Applestein and his company, Diatomite Corporation of America

1

(collectively, "Applestein" or "Plaintiffs"). For the following reasons, their motions are granted in part and denied in part.

## I. BACKGROUND

Plaintiffs bring a legal malpractice claim and related claims against the law firm Wachtel Missry LLP ("Wachtel") and Wachtel partner Howard Kleinhendler ("Kleinhendler") based on Kleinhendler's role in a transaction involving the Fones Cliffs Land, a 1,000-acre parcel of land in Virginia that Applestein sold to a group of investors Kleinhendler organized in 2017. They allege that Kleinhendler, Applestein's attorney, took advantage of Applestein's deteriorating mental state.

The following facts are taken from the pleadings, the parties' Rule 56.1 statements, and the supporting documentation. The facts are undisputed unless otherwise noted. The Court construes all evidence in the light most favorable to the non-moving party, drawing all inferences and resolving all ambiguities in that party's favor. *See LaSalle Bank Nat. Ass'n v. Nomura Asset Cap. Corp.*, 424 F.3d 195, 205 (2d Cir. 2005).

Applestein, a lawyer and businessman, first engaged Kleinhendler to handle several legal matters in May 2009. Plaintiffs maintain that this attorney-client relationship continued until 2019. Plaintiffs claim Applestein sought the legal advice of Kleinhendler in selling or developing the Fones Cliffs Land beginning in

2

2013.  In 2014, they allege that Kleinhendler advised Applestein to reject a $12.5 million offer from the Fish and Wildlife Service to purchase Fones Cliffs.

Plaintiffs contend that Applestein's health began to steeply decline in 2015, pointing to Applestein requiring a live-in caretaker, suffering from cognitive impairment, and needing to wear a location device because he repeatedly got lost in his neighborhood.  Applestein was eventually diagnosed with Alzheimer's disease.  Defendants dispute this characterization, claiming that Applestein was mentally acute throughout the Fones Cliff transaction.

In early 2016, Kleinhendler organized a group of investors in an entity called the Virginia True Corporation ("Virginia True") to purchase Fones Cliffs.  In late March 2016, Applestein and Kleinhendler — negotiating on behalf of Virginia True — agreed to the basic outlines of a deal.  On April 27, 2017, the deal closed for $12 million.  While other lawyers were present in some capacity on Applestein's side, Plaintiffs claim that Kleinhendler continued to represent and advise Applestein during the negotiations and did not advise him of the conflict of interests, specifically, that Kleinhendler was representing both parties in the transaction.

The deal was structured as a seller-financed transaction.  Virginia True paid Applestein $5 million in cash at the closing and financed the remaining $7 million through a loan to be evidenced by a promissory note.  Significantly, Applestein did

not take any collateral or a security interest in the Fones Cliff Land, which Plaintiffs ascribe to Kleinhendler having advised Applestein that taking security was unnecessary and would make development impossible.  However, Kleinhendler did make a promise, via a "Side Letter," that Virginia True would not "transfer any portion of the assets of Virginia True or encumber the Property, without the prior written consent of Allan Applestein and his legal counsel."

However, on the same day of the closing, April 27, 2017, Kleinhendler entered into an agreement ("Stockholders' Agreement) with two investors, Domenick Cipollone and Anthony Cipollone (the "Cipollones"), in which the Cipollones agreed to purchase 32% of Virginia True stock for $5 million.  The Stockholders' Agreement also granted the Cipollones the right to convert their equity investment into debt and encumber the Fones Cliffs Land with a mortgage if they did not receive a return of their capital within 18 months.  On December 12, 2018, Virginia Trust executed a deed of trust in favor of the Cipollones, which Plaintiffs claim Kleinhendler facilitated and agreed.

Unfortunately for all parties, the project went south, and after Virginia True defaulted on the loan, it filed for Chapter 11 bankruptcy on May 3, 2019.  As an unsecured creditor, Applestein claimed $7.28 million.

This litigation began in December 2019, when Applestein filed suit in the Southern District of Florida.  On March 4, 2020, Judge James Lawrence King

4

determined that the action was interrelated to the bankruptcy proceeding pending in this District and transferred venue to this District under 28 U.S.C. § 1404(a). Judge Donnelly denied Defendants' motion to stay this action pending the resolution of the bankruptcy proceeding. *See Applestein v. Kleinhendler*, No. 20-CV-1454 (AMD) (VMS), 2021 WL 493424 (E.D.N.Y. Feb. 10, 2021). After the case was reassigned to this Court, it dismissed Kleinhendler's third-party claims for contribution against Applestein's accountant and another lawyer on Rule 12(b)(6) grounds. *See Applestein v. Kleinhendler*, No. 1:20-CV-1454 (FB) (MMH), 2022 WL 4451215 (E.D.N.Y. Sept. 23, 2022).

## II. DISCUSSION

### A. Legal Malpractice

The essence of Applestein's legal malpractice claim is that Kleinhendler breached his duty of care by failing to advise his client as to the prudence of taking a security interest in the Fones Cliffs Land and by failing to advise Applestein of his conflicting interests. Because Kleinhendler was a Wachtel partner, Applestein proceeds under an agency theory against the law firm.

#### 1. Choice-of-Law Analysis

The Court must first determine the substantive law governing the legal malpractice claim, which involves a two-step inquiry: (1) determining which state's choice-of-law rules apply; and (2) based on the choice-of-law analysis,

5

determining which state's substantive law applies.

First, the Court finds that it must apply Florida's choice-of-law rules. Where a case is transferred based on venue under 28 U.S.C. § 1404(a), the transferee court should apply the choice-of-law analysis of the transferor court to avoid forum-shopping by the defendant. *See, e.g.*, *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 154 (2d Cir. 2019); *In re Coudert Bros. LLP*, 673 F.3d 180, 191 (2d Cir. 2012).

Second, applying Florida's choice-of-law rules, the Court must determine which state has the "most significant relationship" to the occurrences and the parties. *See Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980). This inquiry considers "a) the place where the injury occurred, b) the place where the conduct occurred which caused the injury, c) the domicil, residence, nationality, place of incorporation, and place of business of the parties, and d) the place where the relationship, if any, between the parties is centered." *Id.*

Under Florida's choice-of-law-analysis, the Court finds that New York law governs because, as the state where Kleinhendler is barred and practices, it has the most significant interest in the legal malpractice claim. *See, e.g.*, *Kurlander v. Kaplan*, No. 8:19-CV-742-T-02AEP, 2019 WL 6789572, at *5 (M.D. Fla. Dec. 12, 2019) ("Virginia, rather than Florida, has the greater interest in regulating the alleged misconduct of its lawyers."); *Reichard v. Henderson, Covington,*

6

*Messenger, Newman & Thomas Co., L.P.A.*, No. 18-CV-61128, 2018 WL 5016285, at *6 (S.D. Fla. Oct. 16, 2018), *aff'd sub nom. Reichard v. Henderson Covington Messenger Newman & Thomas Co.*, 779 F. App'x 665 (11th Cir. 2019) ("[W]hile Florida has a strong interest in protecting its citizens from professional negligence by attorneys, its interest in regulating out-of-state conduct by out-of-state attorneys must yield to Ohio's interest in regulating its own attorneys' conduct."); *Cont'l Cas. Co. v. Cura Grp., Inc.*, No. 03-61846-CIV, 2007 WL 9700733, at *6 (S.D. Fla. Jan. 23, 2007) ("[W]hen evaluating the policy considerations and interests of New York as well as the justified expectations of lawyers who practice in New York, New York has the predominant interest."). This outcome would be identical under New York's choice-of-law rules. *See, e.g.*, *LNC Inv., Inc. v. First Fidelity Bank, Nat'l Assoc.*, 935 F. Supp. 1333, 1350 (S.D.N.Y. 1996) (under New York's choice-of-law rules, New York law governs a legal malpractice claim)

### 2. Merits

Turning to the merits, the Court denies Defendants' motion for summary judgment on Plaintiffs' legal malpractice claim because there are fact issues as to whether an attorney-client relationship existed and whether Defendants' negligence caused damages. A legal malpractice claim requires "an attorney-client relationship between the parties, negligence by defendant in its legal

7

representation, proximate cause between defendant's negligence and plaintiff's loss, and actual and ascertainable damages suffered by plaintiff." *Huffner v. Ziff, Weiermiller, Hayden & Mustico, LLP*, 871 N.Y.S.2d 733, 735 (2008).

To determine whether an attorney-client relationship existed, a court "must look to the actions of the parties to ascertain the existence of such a relationship." *Wei Cheng Chang v. Pi*, 733 N.Y.S.2d 471, 473 (2d Dep't. 2001). "While the payment of a fee or existence of a formal retainer agreement may be indicators of an attorney-client relationship, such factors are not dispositive." *Droz v. Karl*, 736 F. Supp. 2d 520, 524-25 (N.D.N.Y. 2010) (citing *Moran v. Hurst*, 822 N.Y.S.2d 564, 566 (2006)). "An attorney-client relationship may instead arise by words and actions of the parties; however, one party's unilateral belief, standing alone, does not confer upon him or her the status of a client." *Id.*

Plaintiffs present evidence that, if credited by a jury, could suffice to establish an attorney-client relationship.  First, Plaintiffs present engagement letters establishing an attorney-client relationship around 2010.  Second, Plaintiffs present evidence that this relationship continued through and pertained to the Fones Cliffs Deal.  For example, invoices sent to Applestein and Diatomite totaling in the hundreds of thousands of dollars through late 2016 identify Kleinhendler as "working on the Virginia deal."  Third, Plaintiffs point to depositions from

8

numerous third parties who identified Kleinhendler as Applestein's attorney during the relevant period and with respect to the Fones Cliffs transaction.

Moreover, there are fact questions as to whether Kleinhendler was negligent and whether that negligence proximately caused damages. "Whether malpractice has been committed is normally a factual determination to be made by the jury." *Indus. Quick Search, Inc. v. Miller, Rosado & Algois, LLP*, No. 13 CIV. 5589 (ER), 2018 WL 264111, at *8 (S.D.N.Y. Jan. 2, 2018) (quoting *Corley v. Miller*, 133 A.D.2d 732, 735 (2d Dep't 1987)). As to damages, Kleinhendler argues that Applestein has failed to proffer evidence concerning the actual value of Fones Cliffs at the time of the transfer. However, under New York law, purchase price can serve as "the fairest assessment of the fair market value at the time." *Mason Tenders Dist. Council Pension Fund v. Messera*, 958 F. Supp. 869, 874 (S.D.N.Y. 1997); *see also Bosch v. LaMattina*, 901 F. Supp. 2d 394, 409 (E.D.N.Y. 2012) (purchase price represents fair market value for legal malpractice claim).

As to Wachtel's liability, New York partnership law holds the partnership liable for any "wrongful act or omission of any partner acting in the ordinary course of the business of the partnership," which forms the basis for partnerships being "often held liable" for an individual partner's acts. *Dev. Specialists, Inc. v. Dechert LLP*, 532 B.R. 473, 483 (S.D.N.Y. 2015) (quoting N.Y. P'SHIP LAW

9

§ 24). Thus, questions of fact as to whether Kleinhendler committed wrongful acts or omissions preclude judgment in Wachtel's favor.

### B. Breach of Fiduciary Duty

The Court dismisses the breach of fiduciary claim as duplicative of the legal malpractice claim under New York law.[1] Under New York law, "where a claim for breach of fiduciary duty is premised on the same facts and seeking the identical relief as a claim for legal malpractice, the claim for fiduciary duty 'is redundant and should be dismissed.'" *Nordwind v. Rowland*, 584 F.3d 420, 432–33 (2d Cir. 2009). Because Plaintiffs' filings make clear that the theory for breach of fiduciary duty is premised on Kleinhendler serving as Applestein's attorney, the Court dismisses the breach of fiduciary duty claim. *See, e.g.*, *Keness v. Feldman, Kramer & Monaco, P.C.*, N.Y.S.2d 313, 315 (2d Dep't 2013) (dismissing as duplicative breach of fiduciary duty claim).

### C. Fraudulent Inducement

The Court denies summary judgment on Plaintiffs' fraudulent inducement claim, which requires "(1) a misrepresentation or an omission of material fact which was false and known to be false by the defendant, (2) the misrepresentation was made for the purpose of inducing the plaintiff to rely upon it, (3) justifiable

---

[1] For the same reasons that New York law applies to the legal malpractice claim, it also governs the breach of fiduciary duty and fraudulent inducement claims.

reliance of the plaintiff on the misrepresentation or material omission, and (4) injury." *Blanco v. Polanco*, 986 N.Y.S.2d 151, 154–55 (2d Dep't 2014). Plaintiffs' theory is that Kleinhendler advised Applestein not to take a security interest in Fones Cliffs and that Kleinhendler would not permit any lien or any other encumbrance to be placed on the Fones Cliffs Land without the prior consent and approval of Applestein, all while agreeing to let the Cipollones encumber the property with a mortgage if they did not receive a return of their investment.[2]

Given the evidence that Kleinhendler entered into the Stockholders' Agreement almost immediately after representing to Applestein that he would not encumber the Fones Cliffs Land without his approval, there are questions of fact as to whether Kleinhendler made false statements and intended to deceive Applestein, and whether Applestein relied on Kleinhendler's misrepresentations. "[S]ummary judgment should be considered skeptically in cases alleging fraudulent inducement, because the issues typically turn on the parties' credibility as to their state of mind." *Century Pac., Inc. v. Hilton Hotels Corp.*, 528 F. Supp. 2d 206, 219 (S.D.N.Y. 2007), *aff'd*, 354 F. App'x 496 (2d Cir. 2009). Wachtel's motion for summary judgment is similarly denied because there are questions of fact as to

---

[2] While a fraudulent inducement claim cannot be duplicative of a legal malpractice claim, Plaintiffs allege different theories. *See Amusement Indus., Inc. v. Buchanan Ingersoll & Rooney, P.C.*, No. 11-CIV-4416 LAK, 2013 WL 628533, at *7 (S.D.N.Y. Feb. 15, 2013). At trial, however, Plaintiffs cannot recover double damages. *See LaBrake v. Enzien*, 562 N.Y.S.2d 1009, 1012 (3d Dep't 1990).

11

whether Kleinhendler was acting within "the ordinary course of the business" of Wachtel (and not Virginia True) when he made the allegedly false representations. *See Dechert LLP*, 532 B.R. at 483.

### D. Florida Statutory Elder Abuse Claims

Finally, the Court denies Defendants' motion for summary judgment on the Florida statutory elder abuse claims. All parties agree that Florida law applies to these claims, and, in any event, Florida has the most significant interest in protecting its elderly and vulnerable residents. *See, e.g.*, *Cluck-U Chicken, Inc. v. Cluck-U Corp.*, 358 F. Supp. 3d 1295, 1309 (M.D. Fla. 2017) (applying Maryland law to common-law tort claims but Florida law to statutory claims). And unlike Florida, New York lacks a civil elder-abuse claim. *See Gilbert v. Gilbert*, No. 02-cv-3728, 2003 WL 22790940, at *2 (S.D.N.Y. Nov. 25, 2003).

Plaintiffs' two claims are: (1) Fla. Stat. § 772.11, which provides a civil remedy — and treble damages — for plaintiffs who prove by clear and convincing evidence violations of the criminal exploitation of an "elderly person" under Fla. Stat. § 825.103(1)(a), which prohibits "obtaining property from an elderly person with the intent to deprive the person of the asset," *Powers v. State*, 289 So. 3d 565, 566 (Fla. Dist. Ct. App. 2020); and (2) Fla. Stat. § 415.1111, which provides a civil remedy for "exploited" vulnerable adults. Both statutes prohibit substantially similar conduct. *Compare* Fla. Stat. § 825.103(1)(a) (requiring the "intent to

12

temporarily or permanently deprive the elderly person or disabled adult of the use, benefit, or possession of the funds, assets, or property, or to benefit someone other than the elderly person or disabled adult"), *with* Fla. Stat. § 415.102(8)(a) (defining exploitation as obtaining property with the "intent to temporarily or permanently deprive the vulnerable adult of the use, benefit, or possession of the funds, assets, or property for the benefit of someone other than the vulnerable adult").

As a threshold matter, it is undisputed that Applestein was an "elderly person" with whom Kleinhendler stood in a position of trust and confidence and had a business relationship under § 825.103(1)(a). Given the hotly contested status of Applestein's health, there are fact questions as to whether he constituted a "vulnerable adult" for the § 415.1111 claim. *See* Fla. Stat. § 415.102 (defining "vulnerable adult" as adult "whose ability to perform the normal activities of daily living or to provide for his or her own care or protection is impaired due to a mental, emotional, sensory, long-term physical, or developmental disability or dysfunction, or brain damage, or the infirmities of aging").

As to the substance of the claims, there are also fact issues precluding summary judgment. Plaintiffs' theory of exploitation is that Kleinhendler, aware that Applestein's health was declining, advised his clint to turn down more lucrative offers, such as the $12.5 million proposal, and not secure the property, so that Kleinhendler could obtain the Fones Cliffs at a cheaper price. *See, e.g.*, Pl.'s

13

Ex. 31 (email stating Applestein "refused to sign [the deal] upon the advice of his attorney, who believes he can build a resort on the property worth much more than $12.5 MM"). While Defendants are correct that the conduct must go "beyond, and be independent from, a failure to comply with the terms of the contract," this case is no ordinary breach-of-contract case; instead, the evidence could lead a reasonable jury to conclude that there was "an intricate sophisticated scheme of deceit and theft." *Epoch Int'l Partners, LLP v. Bigfoot Inc.*, 587 F. Supp. 3d 1214, 1221 (S.D. Fla. 2022) (quoting *Gersh v. Cofman*, 769 So. 2d 407, 409 (Fla. Dist. Ct. App. 2000)). While Kleinhendler objects that partial performance by Virginia True — it wired Applestein $5 million due at closing — negates the necessary "intent to deprive" Applestein of property, this case presents a possible broader scheme to gain the Fones Cliffs Land, against Applestein's interests.

Finally, Fla. Stat. § 772.11 provides for recovery of either (a) threefold actual damages or (b) statutory minimum damages of $200. Kleinhendler argues that because Plaintiffs fail to produce evidence of the value of Fones Cliffs, they may only recover $200 in damages. However, the damages that Plaintiffs sustained is a disputed issue of fact.

Wachtel's motion is similarly denied because there are fact issues as to whether Kleinhendler was acting in the ordinary course of the business of the partnership. The Court has considered and rejects Defendants' other arguments.

14

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted in part and denied in part.  The claim for fraudulent inducement is dismissed.  A jury will determine Plaintiffs' claims of (1) legal malpractice; (2) fraudulent inducement; (3) exploitation of an elderly person under Fla. Stat. § 772.11; and (4) exploitation of a vulnerable adult under Fla. Stat. § 415.1111.

**SO ORDERED.**

           _/S/ Frederic Block_____
           FREDERIC BLOCK
           Senior United States District Judge

Brooklyn, New York
July 30, 2024