UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALLAN H. APPLESTEIN, an individual, and DIATOMITE CORPORATION OF AMERICA, a Maryland corporation,<br><br>           Plaintiffs,<br><br>   -against-<br><br>HOWARD KLEINHENDLER, an individual, WACHTEL MISSRY LLP, a limited liability partnership, and DOES 1 through 5,<br><br>           Defendants. | **MEMORANDUM AND ORDER**<br>Case No. 20-CV-1454 |

*For the Plaintiff:*
THOMAS H. VIDAL
Pryor Cashman LLP
1801 Century Park East, 24th Floor
Los Angeles, CA 90067

*For Defendant Kleinhendler:*
STEPHEN M. FARACI, SR.
Whiteford, Taylor & Preston L.L.P.
1021 East Cary Street, Suite 1700
Richmond, VA 23219

*For Defendant Wachtel Missry LLP:*
ALBERT A. CIARDI, III
Ciardi Ciardi & Astin
1905 Spruce Street
Philadelphia, PA 19103

**BLOCK, Senior District Judge:**

On September 20, 2024, following a multiweek trial, a jury returned a $26 million verdict in favor of Allan Applestein and Diatomite Corporation of America (together, "Plaintiffs") in their suit against Howard Kleinhendler and Wachtel Missry LLP ("Wachtel") (together, "Defendants"). Plaintiffs' allegations stem from

1

a sale of land by Applestein—with whom Kleinhendler had a long-standing relationship—to a corporation set up by Kleinhendler, then a partner with Wachtel. In connection with this sale, the jury found Kleinhendler liable for legal malpractice, fraudulent inducement, and exploitation of a vulnerable adult, and found Wachtel vicariously liable for his conduct. The jury awarded approximately $11 million in compensatory damages and $15 million in punitive damages.

Kleinhendler has now moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50, or, in the alternative, a new trial under Rule 59. Wachtel has also moved for judgment as a matter of law under Rule 50. The Court may grant such motions if it determines there was legally insufficient evidence for the jury to find for Plaintiffs. There is a bad odor to this dispute, which concerns a real estate deal gone sour and the ensuing fallout among the various parties and offspring of an incapacitated and Alzheimer's-afflicted businessman. But this bad odor does not mean there was not legally sufficient evidence to support the jury's verdict. There was. For the reasons set forth in greater detail below, Defendants' motions are DENIED.

## I.   Background

The Court assumes familiarity with the facts. In brief, Plaintiffs brought claims of legal malpractice, fraudulent inducement, and exploitation of a

vulnerable adult against former Wachtel partner Kleinhendler and the Wachtel firm.[1] Plaintiffs alleged that Kleinhendler, who had been Applestein's lawyer beginning in 2009, had taken advantage of the aging Applestein's deteriorating mental state in connection with the sale of a 1000-acre parcel of Virginia land ("Fones Cliffs"). In 2017, Applestein sold Fones Cliffs for $12 million to Virginia True Corporation ("Virginia True"), an entity comprising a group of investors organized by Kleinhendler. Virginia True paid Applestein $5 million at closing and financed the remaining $7 million via an unsecured loan from Applestein. Plaintiffs alleged that Kleinhendler had advised Applestein that taking a security interest in Fones Cliffs to secure the loan was unnecessary and had promised via a side letter (the "Side Letter") not to transfer or encumber the property. Plaintiffs also alleged that Kleinhendler nevertheless then separately struck an agreement (the "Stockholders' Agreement") to sell shares in Virginia True to other investors, the Cipollones, in exchange for $5 million and a conditional right to encumber Fones Cliffs via a mortgage. Virginia True subsequently defaulted and declared bankruptcy.

---

[1] This is a diversity action in which Plaintiffs brought solely state law claims against Defendants. Though the litigation began in the U.S. District Court for the Southern District of Florida, it was transferred to this District pursuant to 28 U.S.C. §1404(a) because it was related to a bankruptcy action pending in the District. *See* ECF No. 26.

3

On September 20, 2024, the jury rendered a verdict in Plaintiffs' favor. The jury found Kleinhendler liable for $11,163,984.85 in compensatory damages and $15 million in punitive damages. The jury also found Wachtel vicariously liable for $112,767.52 in compensatory damages.

## II. Legal Standard

Defendants Kleinhendler and Wachtel have each moved for relief pursuant to Federal Rule of Civil Procedure 50. ECF Nos. 258, 259. Rule 50 "imposes a heavy burden on a movant, who will be awarded judgment as a matter of law only when 'a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *Cash v. Cnty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011) (quoting Fed. R. Civ. P. 50(a)(1)). "That burden is 'particularly heavy' where, as here, 'the jury has deliberated in the case and actually returned its verdict' in favor of the non-movant." *Id.* (quoting *Cross v. N.Y.C. Transit Auth.*, 417 F.3d 241, 248 (2d Cir. 2005)). For a posttrial motion pursuant to Rule 50(b), "a court may set aside the verdict only 'if there exists such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded persons could not arrive at a verdict

against it.'" *Id.* (quoting *Kinneary v. City of New York*, 601 F.3d 151, 155 (2d Cir. 2010)).

Kleinhendler has additionally moved in the alternative for a new trial or remittitur pursuant to Rule 59. ECF No. 259. The standard for granting a Rule 59 motion is "less stringent" than that applied to Rule 50 motions, but still a high bar. *Manley v. AmBase Corp.*, 337 F.3d 237, 244–45 (2d Cir. 2003). The Court may grant such a motion when it "is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *ABKCO Music, Inc. v. Sagan*, 50 F.4th 309, 324 (2d Cir. 2022). Grounds for a new trial exist when the verdict appears to be against the weight of the evidence, which the Court is free to weigh and need not view in the light most favorable to the non-movant. *Manley*, 337 F.3d at 244–45. Remittitur is appropriate in two circumstances: "(1) where the court can identify an error that caused the jury to include in the verdict a quantifiable amount that should be stricken, and (2) more generally, where the award is 'intrinsically excessive' in the sense of being greater than the amount a reasonable jury could have awarded." *Anderson Grp., LLC v. City of Saratoga Springs*, 805 F.3d 34, 51 (2d Cir. 2015) (cleaned up).

### III.   Kleinhendler's Motion

*A.  Legal Malpractice*

A successful legal malpractice claim requires (1) an attorney-client relationship between the parties, (2) negligence in defendant's legal representation, (3) proximate cause between the negligence and plaintiff's loss, and (4) actual, ascertainable damages. *See Huffner v. Ziff, Weiermiller, Hayden & Mustico, LLP*, 871 N.Y.S.2d 733, 735 (3d Dep't 2008).[2]

Kleinhendler first asserts that there was no evidence of an attorney-client relationship between him and Applestein. He observes, for instance, that Plaintiff did not produce a written attorney-client agreement between Kleinhendler and Diatomite or Applestein, and that the record supported the existence only of a commission agreement by Kleinhendler to try to locate a buyer for Fones Cliffs. Kleinhendler further argues that even if such a relationship existed, the scope of Kleinhendler's representation of Applestein did not encompass the Fones Cliffs sale.

However, "'an attorney-client relationship does not depend on the existence of a formal retainer agreement or upon payment of a fee, [so] a court must look to

---

[2] New York law governs Plaintiffs' legal malpractice claim because New York has the most significant interest in this claim as the state where Kleinhendler is registered as a member of the bar. *See Applestein v. Kleinhendler*, No. 20-CV-1454, 2024 WL 3594710, at *2 (E.D.N.Y. July 30, 2024).

the words and actions of the parties to ascertain the existence of such a relationship.'" *Groisman v. Feler*, No. 16-CV-1369, 2017 WL 11690933, at *3 (E.D.N.Y. Sept. 27, 2017) (quoting *Moran v. Hurst*, 822 N.Y.S.2d 564, 566 (2d Dep't 2006)). There was more than enough evidence of the words and actions of the parties for the jury to conclude an attorney-client relationship existed with respect to the sale.

The jury heard a phone call from March 29, 2018, between Kleinhendler and Betz Guzman—Applestein's longtime assistant and right-hand woman—concerning a payment related to Fones Cliffs in which Kleinhendler stated, "I represent you guys . . . I'm your attorney still, and if there's an issue you send it to me." Pl.'s Ex. 121. Numerous witnesses testified that Kleinhendler held himself out as Applestein's attorney. *See* Bivens Direct, Tr. 88:25–89:02; Smith Direct, Tr. 325:06–11; Hasty Direct, Tr. 600:10–15; Jarowey Dep., Tr. 681:09–682:17. This testimony was buttressed by documentary evidence, including engagement letters and a bill sent by Wachtel Missry for work Kleinhendler conducted on the Fones Cliffs deal. Kleinhendler's arguments about this evidence, such as his observation that the bill was sent in error and never paid, go only to its weight.

The same holds for Kleinhendler's argument that that there was insufficient evidence that any alleged breach of his duty to Plaintiffs proximately caused damages. Plaintiffs provided expert testimony concerning Kleinhendler's alleged

7

breach of his duties as Applestein's attorney. *See* Alfieri Direct, Tr. 390:06–393:04. Several witnesses provided testimony suggesting that Applestein would not have consummated the sale of Fones Cliffs to Virginia True—which entailed providing an unsecured $7 million loan—if not for Kleinhendler's conflicts of interest and failure to fully disclose the facts surrounding the deal. *See* Hasty Dep., Tr. 637:25–638:03; Smith Direct, Tr. 325:08–11. There was testimony that Kleinhendler had assured Plaintiffs he had resolved these conflicts and would obtain for Applestein a mortgage equivalent on the loan to Virginia True, but that Kleinhendler did not do so, even as he arranged to encumber the land via a separate deal with the Cipollones. *See* Dohan Dep., Tr. 492:20–25, 496:15–497:10; Hasty Dep., Tr. 637:25–638:03; Smith Direct, Tr. 335:15–336:21. The Court thus cannot conclude there was insufficient evidence for the jury to find that Kleinhendler's breach of his duties to Applestein caused him injury.

### B. Fraudulent Inducement

Fraudulent inducement requires "(1) a misrepresentation or an omission of material fact which was false and known to be false by the defendant, (2) the misrepresentation was made for the purpose of inducing the plaintiff to rely upon it, (3) justifiable reliance of the plaintiff on the misrepresentation or material omission, and (4) injury." *Blanco v. Polanco*, 986 N.Y.S.2d 151, 154–55 (2d Dep't

8

2014).³ Kleinhendler argues there is insufficient evidence of any false statement of Kleinhendler's, and lack of proof of the value allegedly lost, i.e., the injury.

Concerning his purportedly false statements, Kleinhendler argues that there is no evidence his commitment to Applestein not to encumber Fones Cliffs was untrue at the time it was made. He argues this is so because the Stockholders' Agreement with the Cipollones entailed only "a future conflict of which Mr. Kleinhendler was not conscious when negotiating the side letter." ECF No. 259-1 at 25. He highlights his testimony that he did not intend to violate the Side Letter and sought to honor it by, e.g., buying out the Cipollones rather than giving a mortgage on the property. *See* Kleinhendler Direct, Tr. 811:20–812:04, 818:22-819:21.

Plaintiffs conversely argue that Kleinhendler's testimony—that Applestein was aware of the Stockholder's Agreement at the time of the sale to Virginia True—is contradicted by other testimony suggesting Applestein did not learn of this arrangement until long after the closing. *See* Bivens Direct, 209:19–210:14. Plaintiffs also argue that because Kleinhendler was an attorney and a sophisticated party, it is improbable he would have been unaware that the Stockholders' Agreement encumbered Fones Cliffs, as he claimed. Resolution of dueling

---

³ "For the same reasons that New York law applies to the legal malpractice claim, it also governs the . . . fraudulent inducement claims." *Applestein*, 2024 WL 2594710, at *3 n.1.

9

testimony about Kleinhendler's intentions at the time of the sale is precisely the sort of credibility-driven issue properly resolved by the jury, whose determinations the Court will not second-guess. *See ING Glob. v. United Parcel Serv. Oasis Supply Corp.*, 757 F.3d 92, 97 (2d Cir. 2014) (explaining that on a Rule 50 motion "'[t]he Court cannot assess the weight of conflicting evidence, pass on the credibility of witnesses or substitute its judgment for that of the jury'" (quoting *Tolbert v. Queens Coll.*, 242 F.3d 58, 70 (2d Cir. 2001))).

Kleinhendler also argues that Plaintiffs failed to provide proof of the difference in value between the price paid for Fones Cliffs and the value received, asserting that this is a necessary element of the claim. *See* ECF 259-1 at 20 (citing *Kumiva Grp., LLC v. Garda USA Inc.*, 45 N.Y.S.3d 410, 413 (2d Dep't 2017)). He argues that the only valuation was inadmissible hearsay, and thus Plaintiffs have not carried their evidentiary burden. One of Plaintiffs' witnesses on this front, Robert Smith, was an attorney engaged in 2014 to handle zoning issues related to Fones Cliffs. Smith testified that he facilitated an appraisal that estimated the value of Fones Cliffs to be $18.6 million. *See* Smith Direct, Tr. 326:01–18.

The Court overruled Defendants' hearsay objection to this testimony at trial. Kleinhendler repeats that objection. He argues that this testimony conveys the hearsay opinion of the unnamed appraiser, or, in the alternative, is an expert opinion espoused by a lay witness—Smith—without the requisite specialized

10

knowledge. However, the cases on which this argument is premised concern different scenarios, such as those where an attorney-witness's valuation-opinion testimony was derived from information supplied by the client *after* commencement of litigation. *See, e.g.*, *JGR, Inc. v. Thomasville Furniture Indust., Inc.*, 370 F.3d 519 (6th Cir. 2004) (collected in *Autoforge, Inc. v. Am. Axle & Mfg., Inc.*, No. 02-CV-1265, 2008 WL 65603 (W.D. Pa. Jan. 4, 2008)). Smith, conversely, had personal knowledge of the property and was directly involved in an appraisal process undertaken long before this litigation commenced, and the Court properly admitted this evidence. *See* Michael H. Graham, 5 Handbook of Fed. Evid. § 701:1 (9th Ed.) (explaining trial court's discretion to admit lay opinion testimony as to "value of property" and noting modern trend favoring admission); *see also, e.g.*, *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1175 (3d Cir. 1993) (admitting lay valuation testimony based on third-party accountant's report where witness had participated in preparing report and had personal knowledge of property).

  Smith's testimony, coupled with additional evidence such as the $12 million price Virginia True paid, supports the jury's finding of damages to Plaintiff from Kleinhendler's false statement. Because this valuation evidence sufficed, the Court precluded Plaintiffs at trial from eliciting additional, unnecessary valuation

11

testimony concerning a third-party's 2014 offer of $12.5 million to purchase Fones Cliffs, which Kleinhendler advised Applestein to reject. *See* Tr. 516:03–517:03.

### C. *Exploitation of a Vulnerable Adult*

Kleinhendler also challenges the sufficiency of the evidence of Plaintiff's claim under a Florida statute that prohibits a person from knowingly obtaining a vulnerable adult's property with "intent to temporarily or permanently deprive the vulnerable adult of the use, benefit, or possession of the funds, assets, or property for the benefit of someone other than the vulnerable adult." Fla. Stat. § 415.102(8)(a).[4] Kleinhendler does not dispute Applestein's vulnerability, and there was ample testimony on this score. *See, e.g.*, Bivens Direct, Tr. 65:25–67:12; Agronin Direct, Tr. 233:21–235:22. Rather, Kleinhendler argues that there was insufficient evidence of his "intent to deprive" Applestein of his property for his own benefit.

In support of this argument, he highlights his testimony that at the time of the sale of Fones Cliffs to Virginia True he had forgotten about § 2.6 of the Stockholders' Agreement, which conflicted with the Side Letter he signed with Applestein promising not to encumber the property. *See* Kleinhendler Direct, Tr. 810:09–812:04. He further argues that "[e]ven if the jury disbelieved Mr.

---

[4] The law of Florida, rather than New York, governs the elder abuse claim because Florida, where Applestein resides, is the state with the most significant interest in protecting its elderly and vulnerable residents. *See Applestein*, 2024 WL 3594710, at *4.

12

Kleinhendler that he had forgotten about § 2.6 . . . this would not permit the inference that he intended to 'deprive' Plaintiffs of the 'benefit' of Fones Cliff," because "§ 2.6 only allowed a future demand by a third-party," which seemed "unlikely to occur" at the time of the sale to Virginia True. ECF No. 259-1 at 27.

The determination of a party's intent in this context is a "classic jury question." *Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, No. 12-CV-7372, 2020 WL 4251229, at *5 (S.D.N.Y. Feb. 19, 2020); *see also, e.g.*, *Stephens v. Columbia Pictures Corp.*, 240 F.2d 764, 766 (2d Cir. 1957) ("The existence of such intent [to defraud] was a question for the jury."). Such fraudulent intent is "rarely susceptible of direct proof" and thus "often established by circumstantial evidence." *United States v. Singh*, 390 F.3d 168, 188 (2d Cir. 2004). As with the fraudulent inducement claim, there were reasonable grounds for the jury to discount Kleinhendler's testimony that he forgot about or was not conscious of § 2.6 at the time of the Fones Cliffs sale. *See, e.g.*, Bivens Direct, Tr. 94:01–96:16; Bivens Redirect, Tr. 212:13–214:25; Dohan Dep., Tr. 494:19–495:01. The Court cannot conclude there was insufficient evidence to support the verdict simply because the Stockholders' Agreement contained a condition precedent to the encumbrance of Fones Cliffs.

### D. Punitive Damages

Concerning punitive damages, Kleinhendler argues firstly that there was an absence of evidence of underlying liability to support the award, and secondly that the jury's punitive award is excessive. As to his first argument, for the reasons previously discussed, there was adequate evidence supporting the jury's finding of Kleinhendler's predicate liability. And in any event, the Supreme Court has indicated that nominal damages alone may support an award of punitive damages where conduct is undertaken "'for an outrageous purpose, but no significant harm has resulted.'" *See Exxon Shipping Co. v. Baker*, 554 U.S. 471, 494 (2008) (quoting Restatement (Second) of Torts § 908, cmt. c).

In evaluating the potential excessiveness of the punitive damages amount, the Court's overarching obligation is to ensure the award is "fair, reasonable, proportional, and predictable." *Milfort v. Prevete*, 3 F. Supp. 14, 24 (E.D.N.Y. 2014). Additionally, "[p]unitive damages are by nature 'speculative, arbitrary approximations.'" *Id.* (quoting *Payne v. Jones*, 711 F.3d 85, 93 (2d Cir. 2013)). The Supreme Court has derived three "guideposts" from its constitutional jurisprudence to aid in evaluating them: (1) the degree of reprehensibility, which may be demonstrated by certain aggravating factors, such as trickery or deceit; (2) the ratio of the compensatory to punitive damages award; and (3) the difference between the

jury's punitive award and the civil penalties authorized in comparable cases. *See BMW of North America, Inc. v. Gore*, 517 U.S. 559, 574–76 (1996).

     Here, the jury's award of $15 million in punitive damages, as compared to approximately $11.2 million in compensatory damages—a 1.34 ratio—is well within the range courts regularly find acceptable. *C.f.*, *Turley v. ISCG Lackawanna, Inc.*, 774 F.3d 140, 165 (2d Cir. 2014) ("[A]s a general matter, the four-to-one ratio of punitive to compensatory damages awarded is 'close to the line of constitutional impropriety.'" (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003))). There was also sufficient evidence for the jury to have found the requisite reprehensibility to support the award. The aggravating factors considered may have justifiably included Kleinhendler's deceit and Applestein's cognitive decline and vulnerability.

     Because there was sufficient evidence to support the jury's findings of liability on these preceding counts, Kleinhendler's Rule 50 motion is denied in its entirety.

     Kleinhendler argues in the alternative that the Court should grant his Rule 59 motion for a new trial and remittitur because the damages award was excessive. *See* ECF No. 259-1 at 32–33. However, while another jury could have reached a different conclusion concerning damages, the Court does not find this award so intrinsically excessive as to be outside the reasonable range. As already discussed,

15

the punitive-to-compensatory damages ratio was well within the commonly accepted range, and there was adequate evidence of Kleinhendler's wrongdoing and Applestein's vulnerability which the jury may reasonably have credited in support of it. Accordingly, though another reasonable jury may have reached a different result, the Court is unpersuaded that the verdict is seriously erroneous or a miscarriage of justice, and denies Kleinhendler's Rule 59 motion.

## IV. Wachtel's Motion

Wachtel argues that it is entitled to judgment as a matter of law because there was insufficient evidence either to hold the firm vicariously liable for Kleinhendler's actions, or to find Kleinhendler liable on the underlying malpractice claim. The argument as to Kleinhendler's liability for legal malpractice fails for the same reasons discussed above in analyzing Kleinhendler's own motion for judgment as a matter of law on this claim.

As for the argument concerning vicarious liability, the Court must consider whether Kleinhendler was acting within the reasonable scope of Wachtel's business and on behalf of the partnership. *See Dupree v. Voorhees*, 68 A.D.3d 807, 809 (2d Dep't 1996). Wachtel first contends that Kleinhendler's actions vis-à-vis Applestein and Fones Cliffs were outside the scope of its business because there was no evidence that the firm invested in or developed real estate. The firm argues

16

that it is in the legal advice business and that during the relevant period Kleinhendler did not provide legal advice on the transaction.

However, another Wachtel partner testified that the firm *was* in the business of performing real estate transactional work, including "representing clients who are buying the properties, selling properties, refinancing properties[.]" Weintraub Direct, Tr. at 586:19–25. There is further evidence that Kleinhendler, himself a Wachtel partner, acted within the scope of this business on the firm's behalf. For instance, in June 2018 Wachtel sent a bill to Plaintiffs for Kleinhendler's work on the "Virginia Land" matter. *See* Joint Ex. 68. There was also testimony that Wachtel runs conflicts checks before opening such a matter, and that bills are reviewed internally before the firm dispatches them to a client. *See* Weintraub Direct, Tr. at 570:18–577:05. There was countervailing testimony that the bill was sent in error, and that Kleinhendler was simply using the firm's billing system to track his personal time. *See* Weintraub Direct, Tr. at 582:02–582:13; Kleinhendler Cross, Tr. 856:22–857:18. Nevertheless, there was a sufficient basis, exemplified by this bill and other evidence, for the jury to discount this testimony and to find Kleinhendler had acted in the scope of Wachtel's business on the firm's behalf. Accordingly, the jury was not unjustified in finding Wachtel vicariously liable for Kleinhendler's actions respecting the sale of Fones Cliffs, and the firm's Rule 50 motion is denied.

## V.     Conclusion

For the foregoing reasons, Defendants' motions are DENIED in their entirety. The clerk of court is directed to now enter judgment consistent with the jury's verdict.[5]

**SO ORDERED.**

           /S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
April 2, 2024

---

[5] Rule 59 motions like Kleinhendler's may be filed prior to the entry of judgment. *See* Fed. R. Civ. P. 59, advisory committee's note to 1995 amendment ("The phrase 'no later than' is used—rather than 'within'—to include post-judgment motions that sometimes are filed before actual entry of the judgment by the clerk.").