UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------x
ALLAN H. APPLESTEIN, an
individual, and DIATOMITE
CORPORATION OF AMERICA, a
Maryland corporation,

           Plaintiffs,

   -against-

HOWARD KLEINHENDLER, an
individual, WACHTEL MISSRY LLP,
a limited liability partnership, and
DOES 1 through 5,

           Defendants.
------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 20-CV-1454-FB-MMH

*Appearances:*
*For the Plaintiffs:*
THOMAS H. VIDAL
Pryor Cashman LLP
1801 Century Park East, 24th Floor
Los Angeles, California 90067

*For Defendant Kleinhendler:*
STEPHEN M. FARACI, SR.
Whiteford, Taylor & Preston L.L.P.
1021 East Cary Street, Suite 1700
Richmond, Virginia 23219

*For Defendant Wachtel Missry LLP:*
ALBERT A. CIARDI, III
Ciardi Ciardi & Astin
1905 Spruce Street
Philadelphia, Pennsylvania 19103

**BLOCK, Senior District Judge:**

      The jury in this action found Defendant Howard Kleinhendler liable for legal malpractice, fraud, and exploitation of a vulnerable adult. It further found Defendant Wachtel Missry LLP ("Wachtel") vicariously liable for one or more of

those torts. It then awarded Plaintiffs, Allan H. Applestein and Diatomite Corporation of America (collectively, "Applestein"), $11,163,984.85 in compensatory damages and $15,000,000.00 in punitive damages against Kleinhendler. Notwithstanding its finding of vicarious liability, it awarded $112,767.52 in compensatory damages against Wachtel Missry LLP ("Wachtel"). After denying Defendants' post-trial motions, the Court directed the Clerk of Court to "enter judgment consistent with the jury's verdict." *Applestein v. Kleinhendler*, 2025 WL 990804, at *7 (E.D.N.Y. Apr. 2, 2025).

The entry of that judgment has raised an unanticipated issue: Can the parties agree, *sub silentio*, to override the usual rule that vicarious liability is joint and several liability? Having carefully considered the issue, the Court concludes that they cannot and that the issue of Wachtel's vicarious liability must be retried.

**I**

The facts underlying this case are set forth in the Court's decision on Defendants' motions for summary judgment. *See Applestein v. Kleinhendler*, 2024 WL 3594710, at *1–*2 (E.D.N.Y. July 30, 2024). To summarize, Applestein claimed that Kleinhendler, taking advantage of his relationship with Applestein and Applestein's deteriorating mental state, induced him to sell a 1000-acre parcel of land to a group of investors without retaining a security interest in the land.

2

Applestein further claimed that Wachtel was vicariously liable for Kleinhendler's wrongdoing because Kleinhendler was a partner at Wachtel during the relevant time period.

Applestein's proposed verdict form asked the jury to determine Kleinhendler's liability on each of his three claims. If the jury found Kleinhendler liable on any of those claims, it asked: "Did Plaintiffs prove by a preponderance of the evidence that at the time of the elder exploitation, legal malpractice, or fraud, that Kleinhendler was a partner of Wachtel and acting in the ordinary course of business of the Wachtel law firm?" Pls.' Proposed Verdict Form at 2. It then asked the jury to determine a single amount of compensatory damages. Applestein's proposed verdict form did not ask the jury to apportion fault or compensatory damages between Kleinhendler and Wachtel.

The Court's draft verdict form tracked Applestein's in respect to vicarious liability and compensatory damages. Kleinhendler asked for "the accommodation of having damages per claim," which the Court denied. Trial Tr. at 1190. It then opened its substantive instructions to the jury with an explanation of vicarious liability:

> [I]f you find that Kleinhendler is liable . . . , you should consider whether the defendant Wachtel Missry LLP is vicariously liable for his acts. To determine whether Wachtel Missry is liable, you must find that: One, Kleinhendler was a partner at Wachtel Missry LLP when he

3

committed the alleged negligent or wrongful acts. Two, that Kleinhendler was acting on behalf of and within the reasonable scope of the partnership business. "On behalf of" means in the interest of Wachtel Missry LLP.

*Id.* at 1219. It instructed the jury that it should consider vicarious liability "[f]or each of" Applestein's claims against Kleinhendler, and that "you should also not consider whether Wachtel Misery LLP was vicariously liable unless you first find that Kleinhendler was liable for the specific claims." *Id.* at 1219–20. After the Court completed its instructions and explained the verdict form, the jury began its deliberations.

The next day, the Court received the following jury note:

VERDICT V. DAMAGES

Is this dollar amount for both Howard Kleinhendler and Wachtel Missry LLP?

Can the dollar amount be divided and assigned by the jury?

Court Ex. 15; *see* Trial Tr. at 1264. The Court discussed the note with counsel off the record and suggested revising the verdict form to allow the jury to assign damages to each defendant. Counsel for all parties agreed. Defendants' counsel requested a further revision, later preserved on the record, to require the jury to make a separate determination of vicarious liability for each claim, *see* Trial Tr. at 1268; the Court denied the request "to simplify things before the jury as best as we can."

4

*Id.*

Thus, the Court gave the jury a revised verdict sheet, which asked, "How much do you award plaintiffs in compensatory damages against Kleinhendler [and], separately, how much do you award plaintiffs in compensatory damages against Wachtel Missry LLP[?]" *Id.* at 1264. The Court explained, "I didn't break it down initially, you know, there's legal reasons for this, but I think it's okay to have it broken down right now and I've done that for you." *Id.* To ensure that the jury understood its task with respect to vicarious liability, the Court repeated that it would have to consider Wachtel's liability separately for each claim and added that a determination of vicarious liability on any claim would have to be unanimous. *See id.* at 1266 ("So if, for example, you determine that there was vicarious liability with respect to the legal malpractice claim, you have to be unanimous about that.").

The jury resumed its deliberations and eventually returned a verdict finding Kleinhendler liable on all three claims and Wachtel Missry vicariously liable for "legal malpractice, fraudulent inducement, or exploitation of a vulnerable adult." *Id.* at 1282. It awarded a total of $11,276,752.37 in compensatory damages, assigning, as noted, $11,163,984.85 of those damages (99% of the total) to Kleinhendler and $112,767.52 (1% of the total) to Wachtel.

II

At the outset, the Court must acknowledge that the revised verdict form "was an invitation to the jury to come up with an erroneous damage calculation." *Rodick v. City of Schenectady*, 1 F.3d 1341, 1349 (2d Cir. 1993). All agree, as they must, that vicarious liability is joint and several liability, which "imposes on each [defendant] responsibility for the entire damages awarded." *In re Seagroatt Floral Co.*, 78 N.Y.2d 439, 448 (1991). Wachtel is either entirely liable for Kleinhendler's torts, or it is not liable at all; there is no middle ground. In such cases, "[t]he jury should be asked . . . what amount of damages the plaintiff has suffered." *Aldrich v. Thomson McKinnon Sec., Inc.*, 756 F.2d 243, 248 (2d Cir. 1985). "Damages in this amount can then be awarded, jointly and severally, against each defendant found liable." *Id.* That is precisely what would have happened had the jury used the original verdict form. The Court and counsel simply should not have acquiesced in its request to "divide[] and assign[]" compensatory damages.

The more difficult question is what to do about the error. Applestein argues that the Court should ignore the jury's apportionment of damages and enter a judgment making both Kleinhendler and Wachtel jointly and severally liable for the total amount of compensatory damages. He cites *Ravo v. Rogatnick*, 70

6

N.Y.2d 305 (1987), for the proposition that "[t]he jury's apportionment of fault . . . does not alter the joint and several liability of defendants for [a] single indivisible injury." *Id.* at 313. The Court of Appeals in that case further stated, however, that "that aspect of the jury's determination of culpability merely defines the amount of contribution defendants may claim from each other." *Id.*

In *Ravo*, contribution was a possibility because the defendants were joint tortfeasors "act[ing] concurrently or in concert to produce a single injury." *Id.* at 309. Wachtel, by contrast, does not and cannot claim contribution from Kleinhendler because that remedy is not available for a defendant who is only vicariously liable. *See Flood v. Re Lou Location Engr.*, 487 F. Supp. 364, 267 (E.D.N.Y. 1980) ("[T]he New York State Courts still maintain their historic distinction between direct and vicarious liability and continue to rule that if a defendant is actively (directly) negligent then the claim is for contribution but if the defendant is passively negligent and therefore vicariously liable then its claim is for indemnification."). In other words, there was no valid legal basis for allowing the jury to apportion damages between Kleinhendler and Wachtel.

Relying principally on *Shade v. Housing Authority of the City of New Haven*, 251 F.3d 307 (2d Cir. 2001), Wachtel argues that Applestein's failure to object to the revised verdict form requires him to accept the jury's apportionment

7

of damages. The district court in *Shade* "instructed the jury that it should apportion compensatory damages among the defendants and gave the jury a verdict form calling for individually calculated damages against each responsible party." 251 F.3d at 310–11. After the jury followed those instructions, the district court granted the defendants' motion for a new trial, reasoning that "the jury had erred because it had awarded each plaintiff two different awards to be paid by the defendants separately as compensation for a single injury, when it should have calculated one sum as compensation for each plaintiff's injury at each property and awarded that amount jointly and severally against the responsible defendants." *Id.* at 311. When the second trial resulted in a verdict of no damages, the plaintiffs appealed.

The Second Circuit reversed and directed the district court to enter judgment in accordance with the first jury verdict. In so doing, it expressed no opinion as to whether the verdict form was "erroneous to the extent it called for apportionment among the defendants." *Id.* at 312. Instead, it concluded that the defendants' conduct was dispositive: "They not only failed to raise a timely objection to the court's instructions and verdict sheet, but indeed specifically *requested* the apportionment charge that they now assign as error and urged the court to use the verdict form that engendered the alleged inconsistency." *Id.*

8

(emphasis in original). It then held that a verdict that conflicted with the law of joint and several liability was not the sort of "fundamental error" that would justify a new trial in the absence of a contemporaneous objection. *See id.* at 313.

Several facts arguably distinguish *Shade* from the present case. Although Applestein did not object to the revised verdict form, he did not specifically request it, either. In addition, the "fundamental error" standard the Second Circuit applied in *Shade* has been replaced by a more lenient "plain error" standard. *See Rasanen v.Doe*, 723 F.3d 325, 332 n.2 (2d Cir. 2013) ("Consistent with a 2003 amendment to Federal Rule of Civil Procedure 51(d), we have since employed a 'plain error' standard, though invocations of the earlier 'fundamental error' standard have persisted." (internal citations omitted)).

The Court need not grapple with the differences, if any, between invited error and unpreserved error, or the semantic distinction between "fundamental" error and "plain" error. *Shade* is distinguishable for a more substantive reason.

Like the defendants in *Ravo*, the defendants in *Shade* were potentially jointly and severally liable because they were joint tortfeasors. Thus, the jury's apportionment of damages at most "conflicted with the law of joint and several liability." *Shade*, 251 F.3d at 313. The Second Circuit expressly contrasted that circumstance with *Rodick*, in which "the verdict was inconsistent not only with the

9

law of joint and several liability, but also with the doctrine of respondeat superior." *See id.* (citing *Rodick*, 1 F.3d at 1348). "That verdict, we concluded, was 'so contrary to basic concepts of respondeat superior that it would be a miscarriage of justice to let it stand.'" *Id.* (quoting *Rodick*, 1 F.3d at 1348).[1]

Thus, *Rodick* makes it clear that it was error to allow the jury to apportion damages, and that a new trial is an appropriate remedy notwithstanding the lack of any objection to the revised verdict form. It further confirms that a new trial is the *only* appropriate remedy under the circumstances.

Applestein does not seek a new trial. Rather, he asks the Court to enter a judgment holding both Kleinhendler and Wachtel jointly and severally liable for the total amount of compensatory damages. Kleinhendler joins that request, although he does at least suggest a new trial as an alternative.[2] In any event, "the

---

[1] It bears noting that the "fundamental error" standard was also in effect when *Rodick* was decided; the Second Circuit nevertheless excused the lack of a contemporaneous objection and ordered a new trial. *See* 1 F.3d at 1348, 1351.

[2] As support for the new trial alternative, Kleinhendler argues that the error in the revised verdict form was compounded by the Court's denial of his and Wachtel's request to modify the verdict form in two other respects. First, he argues that the Court should have required the jury to answer separate vicarious liability questions for each of Applestein's three claims. The Court remains satisfied that its instructions to the jury adequately explained that it had to determine vicarious liability with respect to each claim, and that its determination as to vicarious liability on a particular claim had to be unanimous. Second, he argues that the Court should have required the jury to make separate compensatory

10

court, on its own, may order a new trial for any reason that would justify granting one on a party's motion." Fed. R. Civ. P. 59(d).

The problem with Applestein's and Kleinhendler's requested remedy is that it requires the Court to ignore the jury's apportionment of fault but to accept its determination of vicarious liability. The Second Circuit was faced with a similar situation in *Rodick*. In that case, the jury's apportionment of damages on the plaintiff's malicious prosecution claim was $55,000 against each of four police officers and $550,000 against the City of Schenectady. Starting from the premise that the jury had found that the plaintiff suffered a total of $55,000 in compensatory damages, the City argued that the erroneous apportionment could be corrected by reducing the award to that amount, "for which the individual officers should be held jointly and severally liable, with the City vicariously liable for only that amount." *Rodick*, 1 F.3d at 1349. Although the City's premise was embodied in New York law, *see id.* (explaining the doctrine of *de melioribus damnis*), the Second Circuit concluded that the result would "be troubling under the circumstances of this case," because, taken as a whole, the verdict might have reflected an intent to award $220,000 (the total of the awards against the individual

---

damages determinations for each claim. Separate determinations may be appropriate when different claims are for different injuries. Applestein's claims, however, involve three different theories of liability for the same injury.

11

officers) or even $770,000 (the total of all the awards). *Id.* Rather than engage in "speculation as to the jury's intention," it remanded for a new trial. *Id.*

*De melioribus damnis* does not apply here because the jury's apportionment was not equal (and because the defendants are not joint tortfeasors in any event). Moreover, there is no question as to the jury's intent with respect to total compensatory damages.

There is, however, a question as to its intent with respect to vicarious liability. *Something* motivated the jury to ask to apportion damages, and reservations about Wachel's vicarious liability is the most likely candidate. As a result, the Court cannot simply assume, as Applestein and Kleinhendler do, that the jury would have found Wachtel vicariously liable had it not been given the revised verdict form. On the contrary, there is good reason to think that the jury based its vicarious liability determination, at least in part, on its ability to assign only a small portion of the resulting damages to Wachtel. A new trial on the issue is the only way to remedy the error without speculation.

## III

The original verdict form correctly presented the case to the jury. The jury asked an intelligent question—as juries tend to do—but received a hasty answer that invited it to return an inconsistent and legally untenable verdict. For these

reasons, the Court orders a new trial on the issue of Wachtel's vicarious liability.

**SO ORDERED.**

    /S/ Frederic Block    
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
May 2, 2025