```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------x
ANDREA BIVENS, as personal
representative and executor of Allan H.
Applestein, and DIATOMITE                        MEMORANDUM AND ORDER
CORPORATION OF AMERICA, a                        Case No. 20-CV-1454-FB-MMH
Maryland corporation,

                        Plaintiffs,

        -against-

HOWARD KLEINHENDLER, an
individual, WACHTEL MISSRY LLP,
a limited liability partnership, and
DOES 1 through 5,

                        Defendants.
---------------------------------------------------x
```

*Appearances:*
For the Plaintiffs:
THOMAS H. VIDAL
Pryor Cashman LLP
1801 Century Park East, 24th Floor
Los Angeles, California 90067

*For Defendant Kleinhendler:*
STEPHEN M. FARACI, SR.
Whiteford, Taylor & Preston L.L.P.
1021 East Cary Street, Suite 1700
Richmond, Virginia 23219

*For Defendant Wachtel Missry LLP:*
ALBERT A. CIARDI, III
Ciardi Ciardi & Astin
1905 Spruce Street
Philadelphia, Pennsylvania 19103

**BLOCK, Senior District Judge:**

I previously ordered a new trial on the issue of Defendant Wachtel Missry LLP's ("Wachtel's") vicarious liability for the torts of Defendant Howard

Kleinhendler. *Applestein v. Kleinhendler*, 2025 WL 1284273 (E.D.N.Y. May 2, 2025); *see also Bivens v. Kleinhendler*, 2025 WL 2085133 (E.D.N.Y. July 24, 2025) (reaffirming that new trial would be limited to vicarious liability and declining to certify the issue for interlocutory appeal). I then denied Plaintiff's motion to enter a judgment against Kleinhendler only and scheduled the new trial for February 2, 2026. *See* Minute Entry of (Sept. 17, 2025).

Sometime thereafter, Plaintiff and Wachtel settled their dispute for an undisclosed amount. On January 2, 2026, they stipulated to a dismissal with prejudice of all claims against Wachtel pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii). Although that rule requires "a stipulation of dismissal signed by all parties who have appeared," *see id.*, Kleinhendler was not a party to the settlement or to the stipulation.[1]

I did not immediately notice the error and so-ordered the stipulation on January 5, 2026. Upon realizing that not all parties had signed the stipulation, I held a status conference by telephone two days later. At that time, I informed the parties that I had inadvertently met William Wachtel, the firm's founding partner, during the winter break:

> I was down in Florida—I have a condo in Florida—and we have a mutual friend. We had coffee together.

---

[1] Counsel for Plaintiff and Wachtel would be well-advised to check their citations more carefully to avoid any suspicion of misleading the Court.

2

> I did not know anything about Mr. Wachtel's involvement in this case and he didn't discuss it with me and I didn't discuss it with him. But he did tell me that there would probably not be a need for a retrial because apparently there were plans to file a stipulation of discontinuance, there was some agreement that was reached between the parties. I have no idea what it was.

Tr. of Jan. 7, 2026, at 3. Turning to the stipulation, I expressed my concern that Kleinhendler was not a party to it: "I need to hear from Mr. Kleinhendler's attorneys as to whether they understand that there's nothing in the discontinuance here that [a]ffects his rights and that he understands his obligations [and] that there will be judgment." *Id.* at 4. In response, Kleinhendler's counsel raised two issues that I had previously addressed in various trial and post-trial decisions. *See id*. at 6.[2] In addition, his counsel asked for an opportunity to submit something "in writing on the legal prejudice point" of Rule 41(a)(2), which permits court approval of settlements signed by fewer than all parties. *Id.* at 5-6. Wachtel's counsel consented, with the caveat that he would have to discuss "some very important confidentiality provisions" with his client before taking a position on the merits." *Id.* at 7-8.

Accordingly, I gave the parties two weeks to discuss the issue amongst

---

[2]Specifically, Kleinhendler's counsel questioned whether judgment should be entered at all "in light of the instructional issues that gave rise to the Court's order on the second trial," and, if so, what the amount of the judgment should be "in light of the verdict, [from] which, as you know, we'd like to strike various claims." Tr. of Jan. 7, 2026, at 6.

3

themselves and to submit papers if they could not arrive at a mutually agreeable resolution. *See id*. at 9-10. The parties were unable to reach an agreement. Having reviewed their subsequent submissions, I can now make the following rulings.

**1.     Recusal**

As an initial matter, Kleinhendler asks that I vacate the so-ordered stipulation and hold everything else in abeyance pending a forthcoming "motion asking this Court to disqualify itself in all further proceedings in this matter under 28 U.S.C. § 455(a)." Letter from Stephen M. Faraci, Sr. (Jan. 21, 2026) at 4. While I claim no authority to prevent Kleinhendler from making that motion, nor do I see any reason to delay the entry of judgment because of it.

Section 455(a) requires recusal "in any proceeding in which [the presiding judge's] impartiality might reasonably be questioned." Partiality is to be evaluated "on an objective basis" that asks "whether a reasonable person, knowing all the facts, would conclude that the trial judge's impartiality could reasonably be questioned." *United States v. Rechnitz*, 75 F.4th 131, 142–43 (2d Cir. 2023) (cleaned up).

"The words ['bias' and 'prejudice'] connote a favorable or unfavorable disposition or opinion that is somehow *wrongful* or *inappropriate*." *Liteky v. United States*, 510 U.S. 540, 550 (1994). Under what has come to be known as the

"extrajudicial source doctrine," a judge's opinion may be "wrongful or inappropriate" if "it rests upon knowledge that [he or she] ought not to possess." *Id.*; *see also id.* at 554 (holding that the doctrine applies to recusal under § 455(a)). I agree, of course, that I learned about the then-forthcoming settlement from an extrajudicial source.

But in addition to coming from an extrajudicial source, the information must "result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966). No reasonable person could conclude that learning nothing about the settlement between Plaintiff and Wachtel except it was in the works led me to form *any* opinion—let alone an *unfavorable* opinion—about Kleinhendler.

Moreover, "[t]he fact that an opinion held by a judge derives from a source outside judicial proceedings is not . . . a *sufficient* condition for 'bias or prejudice' recusal, since *some* opinions acquired outside the context of judicial proceedings (for example, the judge's view of the law acquired in scholarly reading) will *not* suffice." *Liteky*, 510 U.S. at 550. While my conversation with William Wachtel was hardly scholarly, it is nevertheless an insufficient basis for recusal. At this stage of the proceedings, there is no judicial factfinding to be done. My only remaining tasks are to determine whether dismissal of Plaintiff's claims against

5

Wachtel will cause Kleinhendler any legal prejudice, and whether there is any legal basis for forestalling the entry of judgment on Plaintiff's claims against him.

Such rulings "alone almost never constitute a valid basis for a bias or partiality motion." *Id*. at 555 (citing *Grinnell*, 384 U.S. at 583). My rulings may be reversed on appeal, but I am confident that they will not be declared void *ab initio* because of the appearance of partiality. In any event, I am prepared to take that risk if it means bringing this case to a conclusion and sparing one of my colleagues the trouble of bringing owls to Athens. *See* Aristophanes, *The Birds* 301-09 (G. Murray, trans. 1950) ("Euelpides: And who to Athens brings an owl?").

**2.    Dismissal of Wachtel**

On the merits, Kleinhendler begins with the entirely moot point that the stipulation between Plaintiff and Wachtel was not valid under Rule 41(a)(1)(A)(ii). That is precisely what I told the parties on January 7th and precisely why I granted Kleinhendler's request for an opportunity to brief "the legal prejudice point" of Rule 41(a)(2).[3]

---

[3] In addition to the requirement that all parties sign the stipulation of dismissal, Rule 41(a)(1) *might* also be limited to dismissals of an entire case. *Compare Harvey Aluminum, Inc. v. Am. Cyanamid Co.,* 203 F.2d 105, 108 (2d Cir. 1953) "Rule 41(a)(1) provides for the voluntary dismissal of an 'action' not a 'claim[.]'"), *with Wakefield v. N. Telecom, Inc.*, 769 F.2d 109, 114 n.4 (2d Cir. 1985) ("[*Harvey Aluminum*] has been criticized and is now against the weight of authority."). Because *Wakefield* directed the dismissal of a single claim under

Kleinhendler has used that opportunity to, among otherer things, give notice of his

> inten[t] to file a formal Motion to Vacate the Stipulation asking the Court to vacate the Stipulation, order Plaintiffs and Wachtel to disclose the full settlement agreement, and, should Plaintiffs again seek leave to dismiss Wachtel, establish a briefing schedule that allows Mr. Kleinhendler a full and fair opportunity to respond, as appropriate.

Faraci Letter at 3-4. While I appreciate that Kleinhendler would very much like to see the settlement agreement, his inability to do so does not deprive him of a "full and fair opportunity to respond." As he himself recognizes, "[u]nder Rule 41(a)(2), the district court's analysis is limited to analyzing whether the non-settling defendant would suffer 'legal prejudice.'" *Id*. at 3 (quoting *New York v. De Blasio*, 2025 WL 857338, at *2 (2d Cir. Mar. 19, 2025) (summary order)). But he puts the closing quotation marks right before the important part: "The Court's authority does not extend to approving, disapproving, or otherwise passing on the substantive terms of a private settlement of private claims." *De Blasio*, 2025 WL 857338, at *2[.]" *Donziger*, 2013 WL 1481813, at *4.

In other words, courts look for "legal prejudice" flowing from the dismissal

---

Rules 15 and 41(a)(2), *see* 769 F.2d at 114-15, I find it controlling here. *Cf. Blaize-Sampeur v. McDowell*, 2007 WL 1958909, at *2 (E.D.N.Y. June 29, 2007) ("District courts within the Second Circuit have since adopted the approach of the majority of courts in other circuits—that is, that Rule 41(a) does not require dismissal of the action in its entirety.").

of the settling parties' claims, not from the terms of the settlement agreement. That is because the dismissal is the only thing that requires court approval; Plaintiff and Wachtel are free to agree between themselves as to any other matter. By the same token, Kleinhendler and I, not being parties to the settlement agreement, are not bound to it in the event of a remand.

**3.    Entry of Judgment against Kleinhendler**

The "legal prejudice" that most commonly warrants denial of a stipulation of dismissal pursuant to Rule 41(a)(2) concerns "the plight of a defendant who is ready to pursue a claim against the plaintiff *in the same action* that the plaintiff is seeking to have dismissed." *Camilli v. Grimes*, 436 F.3d 120, 124 (2d Cir. 2006) (citing *Jones v. Sec. & Exch. Comm'n*, 298 U.S. 1 (1936)). "Having been put to the trouble of getting his counter case properly pleaded and ready, he may insist that the cause proceed to a judgment." *Jones*, 298 U.S. at 20 (quoting *Skinner v. Eddy Corp.*, 265 U.S. 86, 94 (1924)).

That concern is not present here because there are no pending counterclaims or cross-claims. With respect to the latter, Kleinhendler—the sole active tortfeasor—has a claim for neither indemnification nor contribution. *See Glaser v. M. Fortunoff of Westbury Corp..* 71 N.Y.2d 643, 646 (1988) ("[W]here one is held liable solely on account of the negligence of another, indemnification, not

8

contribution, principles apply to shift the entire liability to the one who was negligent. Conversely, where a party is held liable at least partially because of its own negligence, contribution against other culpable tort-feasors is the only available remedy." (cleaned up)). If by chance he does, he may pursue those claims in a separate action.

Thus, the only impact of the settlement on Kleinhendler is that it reduces the amount of compensatory damages that Plaintiff can recover from him. *See Gerber v. MTC Elec. Techs. Co.*, 329 F.3d 297, 303 (2d Cir. 2003) ("[T]his Circuit's 'one satisfaction' rule . . . prohibits a plaintiff from recovering more than one satisfaction for each injury." (cleaned up)). Far from disputing this, Plaintiff has agreed to "prepare a notice of partial satisfaction with the settlement amount reached with Wachtel." Letter from Thomas H. Vidal (Jan. 21, 2026) at 3. This obviously enures to Kleinhendler's benefit and thus does not prevent me from entering a final judgment disposing of this case.

### 4. Conclusion

For the foregoing reasons, I will not vacate the so-ordered stipulation of dismissal. I instead direct the Clerk of the Court to enter a judgment (1) dismissing Wachtel from the case with prejudice and (2) providing that Plaintiff shall recover from Kleinhendler $11,276,752.37 in compensatory damages, $15,000,000.00 in

9

punitive damages, and post-judgment interest as provided by law.

Upon the entry of judgment, Plaintiff shall forthwith file a partial satisfaction thereof in the total amount set forth in the settlement agreement between her and Wachtel. In addition, Plaintiff shall not record the judgment in any jurisdiction unless she contemporaneously records the partial satisfaction in the same place. Failure to comply with these directives will, upon notice and an opportunity for all parties to be heard, result in sanctions pursuant to my inherent authority and/or relief from judgment pursuant to Federal Rule of Civil Procedure 60.

**SO ORDERED.**

    /S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
February 3, 2026